**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **Jeffrey K. Lord, individually and derivatively/ on behalf of J.K. Lord, LLC,** Plaintiffs, | ) ) ) ) | **CASE** |
| v. | ) | **JUDGE: TBD** |
| **NEW AMERICAN MANUFACTURING LLC; SAN GABRIEL ASSETS LLC; CORBIN BLUME; AND DOE'S 1-20, INCLUDING ALL PRESENTLY UNKNOWN MANAGERS, OFFICERS, DIRECTORS, CONTROL PERSONS, PROMOTERS, AGENTS, AND AFFILIATED SELLER ENTITIES,** Defendants. | ) ) ) ) ) ) ) ) ) ) | |

# Complaint and Demand for Jury Trial

COMES NOW, Plaintiff **Jeffrey K. Lord** ("Lord" or "Plaintiff"), individually and, to the extent necessary, as the principal managing officer and beneficial owner/investor acting through **J.K. Lord, LLC**, brings this Complaint against **New American Manufacturing LLC** ("NAM" or the "Company"), **San Gabriel Assets LLC**, **Corbin Blume**, and Doe's 1-20, including all unknown managers, officers, directors, promoters, agents, control persons, and affiliated seller entities (collectively, "Defendants"), and alleges as follows:

## Nature of the Action

1. This is a federal securities-fraud action arising from Defendants' solicitation and sale of membership units or common units in **New American Manufacturing LLC**, a Wyoming limited liability company.

2. Plaintiff is an Oklahoma investor. Defendants propositioned Plaintiff to invest in NAM in connection with activities, meetings, communications, and/or solicitations occurring in or directed from Texas, Oklahoma, and interstate channels of commerce.

3. Defendants sold, offered, or participated in the sale of securities to Plaintiff, including NAM membership units/common units, by means of materially false and misleading statements and omissions concerning, among other things, the value of the securities, the capitalization and unit structure of NAM, the investment terms, the existence and effect of buyback or return-of-investment protections, the Company's financial condition, the use of investor funds, related-party participation, and the risks and restrictions associated with the investment.

4. The Subscription Agreement states that **J.K. Lord, LLC** purchased **2,000 Units** at **$10.00 per Unit** for a stated purchase price of **$20,000**, and that NAM would issue **8,000 additional bonus units** at **$0.01 per unit** with equivalent value to all units in the Company. "Subscriber wishes to purchase from the Company, and the Company wishes to issue to Subscriber, 2,000 Units (the "Purchased Units"), at a price of $10.00 per Unit, for a total purchase price $20,000 (the "Purchased Price")." "As consideration for entering into this Agreement, the Company will issue 8,000 additional bonus units to the Subscriber at $0.01 per unit to the Subscriber. The bonus units have equivalent value to all units in the Company."

5. A Limited Personal Guaranty associated with the transaction states that, pursuant to a subscription agreement, **J.K. Lord, LLC** purchased **10,000 Units** for a total purchase price of **$100,000**, and that the subscriber was willing to provide the

purchase price only if **Corbin Blume** executed and delivered a limited personal guaranty. “WHEREAS, pursuant to that certain Subscription Agreement (the "Agreement") for Units of New American Manufacturing LLC (the "Company"), dated on August 28, 2024, J.K. Lord, LLC ("Subscriber") purchased 10,000 Units (the "Purchased Units") for a total purchase price of $100,000 (the "Purchased Price");” and “WHEREAS, Subscriber was willing to provide the Purchased Price to the Company only if the undersigned (the "Guarantor") executes and delivers this limited personal guaranty (this "Guaranty").”

6. The term sheet represented that NAM was a private Wyoming company, that it had a capitalization of **1,319,320 Common Units**, that it would issue **2,000,000 Common Units** at **$12.50 per unit**, that funding could be **up to $50,000,000**, and that Corbin Blume, through **San Gabriel Assets LLC**, would participate and purchase common units for up to **$25,000,000**. “It presently has a capitalization consisting of 1,319,320 of Common Units (the “Common Units”). The Company will issue 2,000,000 Common Units fully diluted at $12.50 per common Unit. “15) Funding Up to $50,000,000 “Mr. Corbin Blume, CEO of the Company, through his private holding company San Gabriel Assets LLC, will participate and purchase Common Units for up to $25,000,000 USD.” In addition, 500 bonus units were committed for Weg Energy which were never delivered.

7. Defendants’ representations were materially misleading because, among other things, the transaction documents themselves contain inconsistent investment amounts, unit counts, pricing, dates, and closing terms; Defendants failed to disclose material facts necessary to make their statements not misleading; and

Defendants used contractual disclaimers and investor representations to attempt to shift responsibility for Defendants' own misconduct to Plaintiff.

8. Plaintiff seeks rescission, rescissory damages, actual damages, consequential damages, interest, attorneys' fees where available, costs, and all other relief allowed by law.

**Parties**

9. Plaintiff **Jeffrey K. Lord** is an individual resident and investor in Oklahoma. Plaintiff acted individually and/or through **J.K. Lord, LLC**, of which he signed the Subscription Agreement as "Principal Managing Officer." "SUBSCRIBER: J. K. Lord, LLC Jeffrey K. Lord Signature: Jeffrey K Lord (Jan 28, 2025 16:55 CST) Name: Jeffery K. Lord Title: Principal Managing Officer"

10. Defendant **New American Manufacturing LLC** is a Wyoming limited liability company. The Subscription Agreement states that NAM was formed under Wyoming law by filing Articles of Organization with the Wyoming Secretary of State on February 13, 2023. "WHEREAS, the Company has been formed as a limited liability company under the laws of the State of Wyoming by the filing of its Articles of Organization in the office of the Secretary of State of the State of Wyoming on February 13, 2023";

11. Defendant **Corbin Blume** is an individual who signed the Subscription Agreement for NAM as **Manager**, and who is identified in the term sheet as NAM's **CEO.** "COMPANY: "New American Manufacturing LLC Signature: Corbin Blume Name: Corbin Blume Title: Manager Mr. Corbin Blume, CEO of the Company, through his

private holding company, San Gabriel Assets LLC, will participate and purchase Common Units for up to $25,000,000 USD."

12. Defendant **San Gabriel Assets LLC** is alleged to be an entity controlled by, affiliated with, or used by Corbin Blume. The term sheet states that Blume would participate in NAM's offering through San Gabriel Assets LLC for up to $ 25,000,000. "Mr. Corbin Blume, CEO of the Company, through his private holding company San Gabriel Assets LLC, will participate and purchase Common Units for up to $25,000,000 USD."

13. Defendants **Does 1-20** are presently unknown managers, officers, directors, members, control persons, promoters, finders, brokers, agents, affiliated entities, and other participants in the offer, sale, solicitation, control, management, receipt, transfer, use, or retention of Plaintiff's investment funds. Plaintiff will amend this Complaint to identify these Defendants when their names and roles are discovered.

14. At all relevant times, each Defendant acted as the agent, employee, officer, manager, director, member, partner, alter ego, joint venturer, co-conspirator, promoter, control person, seller, and/or representative of the other Defendants, and acted within the course and scope of that relationship.

## Jurisdiction and Venue

15. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Securities Act of 1933 and the Securities Exchange Act of 1934.

16. This Court has jurisdiction under 15 U.S.C. § 77v(a) for claims arising under the Securities Act of 1933 and under 15 U.S.C. § 78aa for claims arising under the Securities Exchange Act of 1934.

17. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's related state-law claims because they arise from the same case or controversy as the federal securities claims.

18. Personal jurisdiction is proper because Defendants purposefully directed investment solicitations, communications, transaction documents, and/or securities sales to Plaintiff in Oklahoma; accepted funds or commitments from an Oklahoma investor; and caused injury to Plaintiff in Oklahoma.

19. Venue is proper in this District under 28 U.S.C. § 1391 and the federal securities venue provisions because Plaintiff resides in Oklahoma, Defendants transmitted securities-related communications into Oklahoma, and a substantial part of the events, omissions, losses, and effects giving rise to the claims occurred in Oklahoma. Venue is also proper because Defendants used interstate commerce, wires, emails, phone calls, electronic signatures, bank wires, and/or other instrumentalities of interstate commerce in connection with the offer and sale of the securities.

**4.- Securities at Issue**

20. The NAM membership units, common units, purchased units, bonus units, and related contractual rights sold or offered to Plaintiff are "securities" under the federal securities laws, including investment contracts, notes, evidence of indebtedness, and/or transferable investment interests.

21. Plaintiff invested money in a common enterprise with the expectation of profits to be derived substantially from the managerial, entrepreneurial, and operational efforts of NAM, Blume, San Gabriel Assets LLC, and the other Defendants.

22. Plaintiff did not control NAM's operations. Defendants controlled the Company, its capitalization, its disclosures, its use of investor funds, the issuance of units, the books and records, and the investor communications.

## Factual Allegations

### A. Defendants solicited Plaintiff to invest in NAM

23. Defendants propositioned Plaintiff, an Oklahoma investor, to invest in NAM in connection with activities and communications involving Texas, Oklahoma, and interstate commerce.

24. Defendants represented that NAM was a private manufacturing company issuing equity units and that Plaintiff's investment would acquire a defined number of units at a stated price.

25. Defendants represented that the investment carried valuable protections, including bonus units and a personal guaranty or buyback right from Blume.

26. Defendants supplied or caused to be supplied transaction documents, including a Subscription Agreement, term sheet, and Limited Personal Guaranty.

### B. The Subscription Agreement represented that Plaintiff would receive purchased and bonus units

27. The Subscription Agreement states that it was entered into by NAM and **J.K. Lord, LLC** as subscriber "as of August 29, 2024," although the signature block is dated

January 28, 2025. “THIS SUBSCRIPTION AGREEMENT (this "Agreement") is entered into by and between NEW AMERICAN MANUFACTURING LLC, a Wyoming limited liability company (the "Company"), and J.K. Lord, LLC the undersigned Subscriber in the Company ("Subscriber") as of August 29, 2024.Dated: January 28, 2025”

28. The Subscription Agreement states that the subscriber would purchase **2,000 Units** at **$10 per unit** for a total stated purchase price of **$20,000**. “Subscriber wishes to purchase from the Company, and the Company wishes to issue to Subscriber, 2,000 Units (the "Purchased Units"), at a price of $10.00 per Unit, for a total purchase price $20,000 (the "Purchased Price").”

29. The Subscription Agreement further states that NAM would issue **8,000 bonus units** at **$0.01 per unit**, and that those bonus units had equivalent value to all units in the Company. “The Company will issue 8,000 additional bonus units to the Subscriber at $0.01 per unit to the Subscriber. The bonus units have equivalent value to all units in the Company.”

30. The Subscription Agreement contains investor-risk, access-to-information, no-reliance, no-registration, accredited-investor, transfer-restriction, sophistication, and confidentiality provisions. Subscribers acknowledge that, because the Purchased Units have not been registered under the Securities Act of 1933 (the "Securities Act"), and because the Company has no obligation to effect such registration, Subscriber shall continue to bear the economic risk of his investment in the Purchased Units for an indefinite period. Subscriber represents that

Subscriber is an "accredited investor" as such term is defined in Regulation D promulgated by the Securities and Exchange Commission under the Securities Act

31. Defendants cannot avoid liability for their own securities fraud through boilerplate no-reliance, risk, access, confidentiality, or sophistication language, particularly where Defendants knew or recklessly disregarded that material representations and omissions concerning the investment were false or misleading.

**C. The Limited Personal Guaranty represented a return-of-investment or buyback protection**

32. The Limited Personal Guaranty states that Plaintiff was willing to provide the purchase price only if Blume executed and delivered the guaranty. “WHEREAS, Subscriber was willing to provide the Purchased Price to the Company only if the undersigned (the "Guarantor") executes and delivers this limited personal guaranty (this "Guaranty").”

33. The Guaranty provides that Blume guaranteed, upon liquidation of the units, the return of at least the purchased amount, and that if sale proceeds were less than the purchase price, Blume would pay the difference. “Guarantor hereby guarantees to Subscriber, upon liquidation of the Units, the return of at least the Purchased Amount (the "Guaranteed Amount"). To the extent the proceeds of the sale of the Units are less than the Purchased Price, Guarantor shall pay the difference to Subscriber.”

34. The Guaranty further provides that, at the subscriber’s option, after 180 days, Blume or an entity of his choosing would buy back the purchased units at the

purchased price, while Plaintiff would retain any bonus shares issued at the time of investment. "Notwithstanding the foregoing, at the Subscriber's option, after 180 days, Guarantor, or an entity of his choosing, will buy back the Purchased Units at the Purchased Price. The Subscriber will retain any bonus shares issued at the time of the investment."

35. These guaranteed-return and buyback representations were material to Plaintiff's investment decision.

36. On information and belief, Defendants failed and refused to honor the guaranty, buyback, return-of-investment promise, and/or related obligations after Plaintiff demanded performance or otherwise became entitled to payment.

**D. The term sheet represented a materially different capitalization and offering structure**

37. The term sheet, dated January 2025, summarized an offering of NAM common units and stated that NAM had **1,319,320 Common Units** outstanding and would issue **2,000,000 Common Units** at **$12.50 per unit**. "It presently has a capitalization consisting of 1,319,320 of Common Units (the "Common Units"). The Company will issue 2,000,000 Common Units fully diluted at $12.50 per common Unit."

38. The term sheet represented that the post-closing capitalization would consist of **3,319,320 Common Units** fully diluted. "The closing will consist of 3,319,320 Common Units fully diluted."

39. The term sheet represented that the offering involved **$25,000,000** in equity issuances and funding "up to $50,000,000."

40. The term sheet represented that Blume, NAM's CEO, through San Gabriel Assets LLC, would participate by purchasing common units for up to **$25,000,000**. "Mr. Corbin Blume, CEO of the Company, through his private holding company San Gabriel Assets LLC, will participate and purchase a Common Units for up to $25,000,000 USD."

41. These statements were material because they concerned capitalization, valuation, insider participation, related-party participation, funding capacity, dilution, and the economic value of Plaintiff's investment.

42. On information and belief, Defendants failed to disclose material facts concerning whether Blume and San Gabriel Assets LLC actually invested on the represented terms, whether NAM received or had access to the represented funding, whether NAM's capitalization was accurate, whether Plaintiff's units were validly issued, whether bonus units were validly issued, whether any subsequent issuance diluted Plaintiff, and whether Defendants intended or were able to honor the buyback or guaranty.

**E. Defendants' statements and omissions were materially false and misleading**

43. Defendants made materially false or misleading statements and omissions, including but not limited to:

    a. representing that Plaintiff would receive defined equity units with equivalent value while failing to disclose material facts concerning capitalization, issuance, validity, dilution, and transferability;

b. representing that Plaintiff would receive 8,000 bonus units with equivalent value while failing to disclose whether such units were actually issued, recorded, enforceable, or economically equivalent;

c. representing that the investment was protected by Blume's personal guaranty and/or buyback obligation while failing to disclose facts showing Defendants' lack of intent, inability, or refusal to honor that obligation;

d. representing different purchase amounts, unit counts, prices, and dates across transaction documents without adequately disclosing or reconciling the inconsistency;

e. representing or implying that Blume and San Gabriel Assets LLC would make a substantial related-party investment while failing to disclose whether that commitment was real, funded, binding, arm's length, or intended to induce outside investors;

f. failing to disclose all compensation, commissions, finder's fees, broker participation, or other consideration paid or promised in connection with Plaintiff's investment;

g. failing to disclose the Company's true financial condition, liabilities, capitalization table, assets, operations, use of proceeds, related-party transactions, and ability to perform;

h. failing to provide complete and accurate books, records, capitalization information, offering materials, financial statements, and risk disclosures; and

i. using interstate communications, electronic signatures, wires, emails, telephone calls, and written offering documents to solicit and complete the investment.

44. Defendants' misstatements and omissions were material because a reasonable investor would consider them important in deciding whether to invest, how much to invest, whether to rely on the guaranty or buyback, and whether the securities had the represented value.

45. Plaintiff reasonably and justifiably relied on Defendants' statements, omissions, written documents, and course of conduct in investing in NAM.

46. Plaintiff has suffered damages in an amount to be proven at trial, including but not limited to the investment principal, loss of use of funds, lost value of units and bonus units, consequential damages, costs, attorneys' fees where available, and rescissory damages.

## Claims for Relief

### Count I — Violation of Section 10(b) of the Securities Exchange Act and SEC Rule 10b-5 Against All Defendants

47. Plaintiff incorporates paragraphs 1 through 46 as if fully set forth herein.

48. Defendants, directly and indirectly, by use of means and instrumentalities of interstate commerce, the mails, and/or facilities of a national securities exchange, in connection with the purchase or sale of securities, knowingly or recklessly employed devices, schemes, and artifices to defraud; made untrue statements of material fact; omitted material facts necessary to make their statements not

misleading; and engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiff.

49. Defendants' conduct violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5.

50. Defendants acted with scienter because they knew, or were severely reckless in not knowing, that their representations and omissions concerning NAM, the units, the capitalization, the valuation, the guaranty, the buyback, insider participation, and use of funds were false or misleading.

51. Plaintiff relied on Defendants' misrepresentations, omissions, and fraudulent course of conduct in purchasing NAM securities.

52. Defendants' misconduct directly and proximately caused Plaintiff's losses.

53. Plaintiff is entitled to damages, rescissory damages, interest, costs, and all other relief available under the Exchange Act and applicable law.

**Count II — Control Person Liability Under Section 20(a) of the Securities Exchange Act Against Blume, San Gabriel Assets LLC, and Doe Control Persons**

54. Plaintiff incorporates paragraphs 1 through 53 as if fully set forth herein.

55. NAM and the other primary violators violated Section 10(b) and Rule 10b-5 as alleged above.

56. Defendants Blume, San Gabriel Assets LLC, and Doe control persons directly or indirectly controlled NAM and/or the persons who made, approved, authorized, disseminated, or participated in the challenged statements, omissions, and sales.

57. Blume signed the Subscription Agreement on behalf of NAM as Manager and was identified as CEO in the term sheet. Blume also executed or was identified as a guarantor under the Limited Personal Guaranty.

58. San Gabriel Assets LLC was identified as Blume's private holding company and as a participant in the same NAM common-unit financing.

59. By reason of their positions, ownership, authority, control, access to information, and participation in the offering, these Defendants had the power and ability to control the specific transactions and misconduct alleged herein.

60. These Defendants are jointly and severally liable under Section 20(a), 15 U.S.C. § 78t(a), for the Exchange Act violations alleged herein.

**Count III — Violation of Section 12(a)(2) of the Securities Act Against All Statutory Sellers**

61. Plaintiff incorporates paragraphs 1 through 60 as if fully set forth herein.

62. Defendants offered or sold securities to Plaintiff by means of prospectuses, offering documents, term sheets, subscription documents, oral communications, electronic communications, and other solicitations.

63. Those communications included untrue statements of material fact and omitted material facts necessary to make statements, in light of the circumstances under which they were made, not misleading.

64. Defendants were statutory sellers because they passed title, solicited the purchase for their own financial interest or the financial interest of NAM or affiliated entities, participated in the transaction, and/or directly urged Plaintiff to purchase NAM securities.

65. Plaintiff did not know, and in the exercise of reasonable care could not have known, of the untruths and omissions at the time of purchase.

66. Plaintiff is entitled to rescission, rescissory damages, interest, costs, and all other relief available under Section 12(a)(2), 15 U.S.C. § 77l(a)(2).

**Count IV — Violation of Section 12(a)(1) of the Securities Act Against All Statutory Sellers, Pleaded in the Alternative**

67. Plaintiff incorporates paragraphs 1 through 66 as if fully set forth herein.

68. The Subscription Agreement states that the purchased units were not registered under the Securities Act and that NAM had no obligation to effect registration. Subscriber acknowledges that, because the Purchased Units have not been registered under the Securities Act of 1933 (the "Securities Act"), and because the Company has no obligation to effect such registration, Subscriber shall continue to bear the economic risk of his investment in the Purchased Units for an indefinite period.

69. On information and belief, Defendants offered and sold NAM securities to Plaintiff without an effective registration statement and without satisfying all requirements of an exemption from registration.

70. To the extent Defendants contend the sale was exempt under Regulation D or another exemption, Defendants bear the burden of establishing compliance with the exemption's requirements, including but not limited to requirements concerning accredited-investor status, general solicitation, disclosure, integration, bad-actor disqualification, and filing or notice obligations.

71. Defendants are liable under Section 12(a)(1), 15 U.S.C. § 77l(a)(1), and Plaintiff is entitled to rescission, rescissory damages, interest, costs, and all other relief available by law.

**Count V — Control Person Liability Under Section 15 of the Securities Act Against Blume, San Gabriel Assets LLC, and Doe Control Persons**

72. Plaintiff incorporates paragraphs 1 through 71 as if fully set forth herein.

73. NAM and the statutory sellers violated Sections 12(a)(1) and/or 12(a)(2) of the Securities Act as alleged above.

74. Blume, San Gabriel Assets LLC, and Doe control persons controlled NAM and/or the statutory sellers by virtue of their managerial positions, ownership interests, authority, control over disclosures, control over the offering, and participation in the sale.

75. These Defendants are jointly and severally liable under Section 15 of the Securities Act, 15 U.S.C. § 77o, for the Securities Act violations alleged herein.

**Count VI — Common-Law Fraud and Fraudulent Inducement Against All Defendants**

76. Plaintiff incorporates paragraphs 1 through 75 as if fully set forth herein.

77. Defendants made material false representations and concealed material facts concerning the NAM investment, including the number and value of units, bonus units, capitalization, investment amount, guaranty, buyback right, insider participation, related-party transactions, use of funds, and Defendants' intent and ability to perform.

78. Defendants knew the representations were false or misleading, or made them recklessly without knowledge of their truth.

79. Defendants intended Plaintiff to rely on the representations and omissions so that Plaintiff would invest in NAM.

80. Plaintiff reasonably relied on Defendants' statements and omissions and was thereby induced to invest.

81. Plaintiff suffered damages as a direct and proximate result.

**Count VII — Negligent Misrepresentation Against All Defendants, Pleaded in the Alternative**

82. Plaintiff incorporates paragraphs 1 through 81 as if fully set forth herein.

83. Defendants, in the course of their business and in transactions in which they had a pecuniary interest, supplied false information to Plaintiff for the purpose of inducing Plaintiff's investment.

84. Defendants failed to exercise reasonable care or competence in obtaining, verifying, and communicating the information supplied to Plaintiff.

85. Plaintiff justifiably relied on Defendants' false information and suffered damages.

**Count VIII — Breach of Contract Against NAM and Blume**

86. Plaintiff incorporates paragraphs 1 through 85 as if fully set forth herein.

87. The Subscription Agreement, Limited Personal Guaranty, and related transaction documents are valid and enforceable contracts, or alternatively are enforceable to the extent Defendants seek to retain the benefits of Plaintiff's investment.

88. Plaintiff performed, tendered performance, or was excused from performance.

89. NAM breached the Subscription Agreement and related obligations by failing to provide the promised units, bonus units, accurate records, economic rights, and investment protections, and/or by otherwise failing to perform according to the transaction documents.

90. Blume breached the Limited Personal Guaranty by failing to return the purchased amount, pay the difference upon liquidation, and/or buy back the purchased units at the purchased price after 180 days at Plaintiff's option.

91. Plaintiff suffered damages as a direct and proximate result of these breaches.

**Count IX — Breach of Fiduciary Duty Against Managers, Officers, Directors, and Control Persons**

92. Plaintiff incorporates paragraphs 1 through 91 as if fully set forth herein.

93. Defendants who served as managers, officers, directors, managing members, control persons, or de facto fiduciaries of NAM owed duties of loyalty, care, candor, good faith, and fair dealing to investors and members, including Plaintiff and/or J.K. Lord, LLC.

94. Defendants breached those duties by misrepresenting and concealing material facts, engaging in self-dealing or related-party transactions, failing to issue and account for units properly, misusing or diverting funds, failing to honor investor protections, and placing their own interests above Plaintiff's interests.

95. Plaintiff suffered damages as a direct and proximate result.

**Count X — Unjust Enrichment and Money Had and Received Against All Defendants**

96. Plaintiff incorporates paragraphs 1 through 95 as if fully set forth herein.

97. Defendants received, retained, used, transferred, or benefitted from Plaintiff's investment funds and related economic value.

98. Defendants' retention of those funds and benefits would be unjust because the investment was procured by fraud, material omission, misleading statements, failure of consideration, and/or failure to honor promised protections.

99. Plaintiff is entitled to restitution, disgorgement, constructive trust, equitable lien, and all other equitable relief available by law.

**Count XI — Accounting, Books and Records, Constructive Trust, and Equitable Relief**

**Against All Defendants**

100. Plaintiff incorporates paragraphs 1 through 99 as if fully set forth herein.

101. Plaintiff is entitled to a complete accounting of all funds invested by Plaintiff; all NAM securities issued or promised to Plaintiff; all bonus units; all capitalization tables; all transfers, distributions, related-party payments, commissions, salaries, loans, or reimbursements; all use of proceeds; and all communications concerning Plaintiff's investment.

102. Defendants possess information and records uniquely within their control, and Plaintiff cannot determine the full amount of damages or trace funds without an accounting and discovery.

103. Plaintiff is entitled to equitable relief, including an accounting, constructive trust, preservation order, disgorgement, and such other relief necessary to prevent further dissipation of assets.

**Count XII — Civil Conspiracy / Concerted Action Against All Defendants**

104. Plaintiff incorporates paragraphs 1 through 103 as if fully set forth herein.

105. Defendants agreed, expressly or tacitly, to accomplish unlawful objectives and/or lawful objectives by unlawful means, including the solicitation of Plaintiff's investment through material misrepresentations, omissions, and deceptive transaction documents.

106. Defendants committed overt acts in furtherance of the conspiracy, including preparing, transmitting, approving, signing, or using the Subscription Agreement, term sheet, guaranty, capitalization representations, buyback representations, and related communications.

107. Plaintiff suffered damages as a direct and proximate result of Defendants' conspiracy and concerted conduct.

**Count XIII — Aiding and Abetting Fraud, Breach of Fiduciary Duty, and Securities Violations Against Participating Defendants**

108. Plaintiff incorporates paragraphs 1 through 107 as if fully set forth herein.

109. One or more Defendants committed primary violations of law, including fraud, securities-law violations, breach of fiduciary duty, and breach of contractual or equitable obligations.

110. The remaining Defendants knew of the wrongful conduct, substantially assisted it, encouraged it, concealed it, or knowingly benefitted from it.

111. Plaintiff suffered damages as a direct and proximate result of Defendants' aiding and abetting conduct.

**Private Securities Litigation Reform Act Allegations**

112. Plaintiff alleges fraud with particularity based on the documents and information presently available before discovery.

113. The specific documents containing material representations include, without limitation, the Subscription Agreement, the Limited Personal Guaranty, the term sheet, and related communications and solicitations.

114. The persons presently known to have made or approved the statements include NAM, Blume, San Gabriel Assets LLC, and unknown managers, officers, directors, promoters, control persons, and agents whose identities will be confirmed in discovery.

115. The statements were false or misleading when made because Defendants knew or recklessly disregarded the true facts concerning NAM's capitalization, valuation, funding, related-party investment, issuance of units, bonus units, use of funds, financial condition, risks, and ability or intent to honor the guaranty and buyback.

116. A strong inference of scienter arises from, among other facts, Blume's managerial and CEO role, his signature on behalf of NAM, his personal guaranty, the inconsistent transaction terms, the representation of massive related-party participation through his own private holding company, Defendants' superior and exclusive access to NAM's books and capitalization, and Defendants' failure or refusal to honor the promised protections.

117. Plaintiff's losses were caused by the materialization of the undisclosed risks and the truth concerning the securities, the Company, the guaranty, the buyback, and Defendants' misrepresentations and omissions.

## Demand for Jury Trial

118. Plaintiff demands a trial by jury on all issues so triable.

## Prayer for Relief

**WHEREFORE,** Plaintiff respectfully requests that the Court enter judgment in Plaintiff's favor and against Defendants, jointly and severally, and award the following relief:

1. Rescission of Plaintiff's investment and return of all consideration paid;
2. Rescissory damages under the Securities Act;
3. Compensatory damages, actual damages, consequential damages, and benefit-of-the-bargain damages in an amount to be proven at trial;
4. Damages under Section 10(b), Rule 10b-5, Section 20(a), Section 12(a)(1), Section 12(a)(2), and Section 15 of the federal securities laws;
5. Restitution, disgorgement, constructive trust, equitable lien, and accounting;
6. Prejudgment and post-judgment interest at the maximum lawful rate;
7. Attorneys' fees and litigation expenses where permitted by contract, statute, equity, or other applicable law;
8. Costs of suit;
9. Punitive or exemplary damages on claims for which such damages are available;

10. An order requiring Defendants to preserve and produce books, records, capitalization tables, communications, financial statements, bank records, investor records, transfer records, and documents concerning Plaintiff's investment and NAM's use of proceeds;
11. Leave to amend to identify additional managers, officers, directors, control persons, promoters, affiliated companies, and Doe Defendants; and
12. Such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: ___________, 2026

:// s/

**Kevin V Cox, PLLC**

**Kevin V. Cox, OBA #20970**

**320 S Boston Ave, Suite 1020**

**Tulsa, OK 74103**

**(918)984-2410**

**www.visionarylaw.org**

**kvc@viwsionarylaw.org**

*Counsel for Plaintiff Jeffrey K. Lord*